No. 9982

Orleans      :

BENEDICT v. VEITH

(Jan. 16, 1928.   Opinion and Decree.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Surveyors and Surveys—Par. 3, 5, 9.**

In an action of boundary preference will be given to ancient lines established by official surveyors and adopted by their successors over the surveys made by later surveyors.

Appeal from Civil District Court, Hon. M. M. Boatner, Judge.

Action by Percy S. Benedict against Philip G. Veith.

There was judgment for plaintiff and defendant appealed. ..

Judgment affirmed.

John J. McCloskey and M. M. Irvin, of New Orleans, attorneys for plaintiff, appellee.

Frederick G. Veith, of New Orleans, attorney for defendant, appellant.

CLAIBORNE, J. This is a suit to establish the boundary line between properties owned by plaintiff and defendant respectively.

The plaintiff alleged that by Act of P. D. Olivier, Notary, dated April 22nd, 1916, he purchased from Miss K. L. Minor the following property:

Three lots of ground situated in the Sixth District in the square bounded by Napoleon avenue, Jena, Franklin and Saratoga streets, designated by the Nos. 18, 19 and 20 and measuring as follows: Lots Nos. 18 and 19 each 30'3"4"' front on Jena street and Samuel Park by 150'7" deep and lot No. 20 30'4" front on Jena street and Samuel Park by 150'7" deep, forming the corner of Jena and Franklin and Samuel Park; that the defendant is the owner of the lots 16 and 17 in the same square and adjoining plaintiff's property; that the plaintiff and the defendant have had the boundary line between their properties surveyed by Frank N. Waddill, Civil Engineer, for plaintiff, and by W. J. Seghers; Surveyor, for defendant, and that said surveyors have disagreed as to the correct location of their boundary line; that it is necessary that a judicial fixing of said boundary line be made under Articles 832 and others of the Civil Code.

Plaintiff prays for judgment fixing the boundaries, or that a third surveyor be appointed.

The defendant admitted the allegations of plaintiff's petition and further answering averred that on November 24th, 1923, he caused his two lots 16 and 17 to be surveyed by W. J. Seghers and that according to said survey the plaintiff herein had under fence a portion of defendant's property; later, on February 2nd, 1924, the plaintiff caused a survey to be made by F. M. Waddill, surveyor, according to which plaintiff would be entitled to more ground that he presently had under fence; that thereafter, on March 24th, 1924, F. A. Fabacher, owner of the lot adjoining that of defendant on the opposite side, had his property surveyed by S. E. Calongue, Civil Engineer, who concurred with the survey of defendant's lots made by Seghers. The defendant therefore prayed for judgment in accordance with the survey made by Seghers and Calongue. On January 23rd, 1925, there was judgment in favor of plaintiff and against the defendant adopting the boundary line fixed by Frank H. Waddill.

The defendant has appealed.

Annexed to the transcript are the two plans or sketches made by the two surveyors, Waddill and Seghers, together with their testimony explaining the methods by which they arrived at their conclusions. They both agree as to the dimensions of the lots of the plaintiff and of the defendant. They disagree only as to the location of those lots and as to the starting points. Waddill has adopted the St. Charles Avenue stone curbing as his starting point. According to him this point has been established by city surveyors.

He says.

"In making the survey I followed street alignments from the general survey of East and West Bouligny in this vicinity which I made probably 25 years ago. At that time the territory was sparsely settled, and the surveys being made by Brosnan, Pilié, Lewis and others were to some ex-

tent conflicting, and by conferring with the others, I found that the general method and the predominating method of location was by taking St. Charles avenue as a base and taking plan or title measurements from St. Charles avenue, and in order that I might carry out this method consistently and to avoid conflict of other surveys, which is always expensive to owners, I made in a limited way a general survey, that is to say, starting from St. Charles Avenue, I measured back two blocks, located the center line of Baronne street, ran a transit line down that street, and measured over to every built-up corner. I then went two blocks further back to Rampart street doing the same thing, and so continuing as far as there were any improvements, and in that way I had the alignments on every alternate street, so that any survey I should make or would have to make in that territory would be consistent with every other survey, and I would have a starting point on one end of the block. That method I followed out in every case and I did so in this particular case. The survey for Mr. Benedict * * * shows that the Veith property is decidedly out of line with the two ends of the block.

"The situation just now is, a neighbor of Mr. Veith, on the river side, has a great deal more than his measurement, is with nearly two feet on Samuel Square, and about a foot in the rear, and Mr. Veith's lots are shoved over correspondingly and encroaching about that much on Mr. Benedict's property; in other words, in my survey about 15 inches on the front and about one inch in the rear. The fence between Veith and Benedict is almost exactly right. On Jena street by my survey the fence is at an angle and by the time it reaches Samuel Square it is about 16 inches over on Mr. Benedict's lot. * * * I went on the ground with Mr. Brosnan, who had been the City Engineer previously, and we operated in the same way, except that we merely started from St. Charles avenue. I think I got the St. Charles avenue line from the stone curb which was set at the time on St. Charles avenue, which are still there just as they were * * * they had been set long before my recollection of New Orleans. I cannot say who the engineer was that located

them. It was one of the very old surveyors, * * * City Engineers, * * *, the square from Saratoga to Franklin should measure 303 feet and the three feet are divided among the lots equally; that is why Mr. Benedict has eleven inches more; by taking the front measurements of all the lots taken together would equal 303 feet."

Mr. Seghers testified that he had a method of survey in these particular squares based on the survey of East and West Bouligny; from the river back to Claiborne street; he found a surplus between the river and St. Charles avenue, he then tried St. Charles avenue, Carondelet, Baronne street and Dryades, and thence to a point of monument fixed by Reynolds at Napoleon avenue and Claiborne on a survey made for the Sophie Newcomb property extending from Claiborne to Broad, and he found the measurements to correspond with the original plan of Bouligny; according to his way of operating his plan of survey indicates the correct line separating the properties of plaintiff and defendant absolutely in accordance with the plan of Mr. Reynolds; the discrepancy between Waddill and him is caused by the different location given by each of Franklin street; there is no discrepancy of measurements given by each of the lots of plaintiff and defendant; the lines of the curbs on St. Charles street have been changed and they are a very unreliable place to start from; he locates with reference to old buildings and old fences that have been there for years, and iron posts which have been put in accordance with surveys.

S. E. Calongue, Civil Engineer and Surveyor, testified that he made a survey of the Fabacher lots on the river side of Veith, the defendant herein; the dividing line between Fabacher and Veith is not the same as that indicated on the Seghers plan, there is a difference of one and a

half inches; all surveys on the north side of St. Charles avenue going out Napoleon avenue, originate from the old Clarke and Meader corner on the uptown lake side of St. Charles and Napoleon avenue, and they confine themselves to the Brosnan plan; they tried to identify the location of the corner of Jena and Franklin streets, and they did not find it correct; they confine themselves to the Brosnan plan in that section.

The defendant testified that he had built his house on his lots without having them surveyed.

It will thus be seen that the difference between the two surveyors Waddill and Calongue and the third, Seghers, arises from the fact that the former two rely upon the Brosnan plans, taking as their starting point St. Charles avenue, while the last is controlled by the Reynolds plan beginning at Claiborne street. The testimony seems to establish that the Brosnan survey was adopted officially by City Surveyors in times gone by and was the basis of gutter curbs laid down by the city. Such was the opinion of the trial Judge and a careful reading of the testimony and a study of the plans in the record lead us to the opinion that he was correct.

It is therefore ordered that the judgment be affirmed.